# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

JAMES ROBERT BONOMELLI, )
)
        Petitioner, )
)
vs. ) Case No. CIV-07-212-D
)
WALTER DINWIDDIE, Warden, )
)
        Respondent. )

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner appearing pro se, brings this action pursuant to 28 U.S.C. § 2254 seeking a writ of habeas corpus. The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B) and (C). Respondent has filed a response to the petition [Doc. No. 10], the state court transcripts and the original record [Doc. No. 12]. Although Petitioner was twice granted an extension of time in which to file a reply to the response, as of this date, he has failed to do so, and the case is at issue.[1] For the reasons set forth herein, it is recommended that the petition be

---

[1]Petitioner sought and was granted two extensions of time to file a reply to the response. Doc. Nos. 14 & 16. However, rather than file a reply, Petitioner requested that he be provided a copy of the trial record before filing his reply. Doc. No. 17. Noting that Respondent had attached to the response the cited portions of the transcript and all other exhibits relied upon in the response, the undersigned found that Petitioner had failed to show a need for additional state court records, and denied his request for a copy of the entire state court record and also denied his requests for an evidentiary hearing and appointment of counsel. Doc. No. 18. Judge Timothy D. DeGiusti overruled Petitioner's objection to the denial of his request for transcripts and state court records and granted Petitioner an extension of time to file his reply to the response. Doc. No. 21. Petitioner neither filed a reply nor requested any further extensions of time in which to do so.

denied.

Petitioner was convicted, after a jury trial held in 2004,[2] of possession of child pornography (Count Two), felonious possession of a firearm (Count Three), and felonious possession of marijuana (Count Five), all after former conviction of two or more felony convictions, in Case No. CF-2002-413, District Court of Comanche County.[3] Petition, p. 1. In accordance with the jury's recommendation, Petitioner was sentenced to forty years imprisonment, twenty years imprisonment and forty years imprisonment, respectively. Tr. Vol. 3, pp. 617-18. The trial court ordered that the terms of imprisonment be served consecutively. *Id.* Petitioner filed a direct appeal with the Oklahoma Court of Criminal Appeals ("OCCA"), arguing *inter alia* that (1) the trial court's denial of a motion for continuance resulted in state-induced ineffective assistance of counsel and (2) his consecutive sentences totaling 100 years were excessive. Response, Ex. 1. The OCCA affirmed the judgment of the trial court but found that the consecutive sentences were excessive under the facts of the case, and the sentences were modified to be served concurrently, for a total of 40 years of imprisonment. Response, Ex. 3 (OCCA Summary Opinion in *Bonomelli v. State*, Case No. F-2004-161). Petitioner states that he has filed no applications for post-conviction relief. Petition, p. 3.

---

[2]These convictions were the result of a second trial when Petitioner's first trial ended in a mistrial. *See* Transcript dated November 19 and 20, 2003, p. 221.

[3]The jury acquitted Petitioner on the charges in Count One, solicitation of a minor, and Count Four, possession of a firearm while committing a felony. Tr. Vol. 3, pp. 609-10.

In his federal habeas petition Petitioner raises the same two challenges. In Ground One Petitioner alleges that the trial court's denial of defense counsel's motion for continuance resulted in state-induced ineffective assistance of counsel. Petition, p. 7. Petitioner alleges in Ground Two that his sentences are excessive and violate the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution. Petition, p. 9

Respondent contends that Petitioner is not entitled to habeas corpus relief in Ground One because the OCCA's rejection of this claim was not contrary to or an unreasonable application of clearly established federal law. With respect to Ground Two, Respondent contends that Petitioner's sentences, as modified by the OCCA, are not excessive or disproportionate.

**Background**

K.P., age twelve at trial, testified that he often went to Petitioner's house in Lawton, Oklahoma, and that in the late evening of September 21, 2002, he and another juvenile male, S.H, were at Petitioner's home playing with butane lighters. Tr. Vol. 1, pp. 86-88. K.P. testified that his lighter ran out of fluid, so he went into Petitioner's bedroom to get some more. *Id.*, p. 91. K.P. testified that Petitioner showed him a gun that he kept under his pillow and stated that he used it for protection. *Id.*, p. 93. K.P. testified that Petitioner asked him several times what was in his pants, and after K.P. answered "a private," Petitioner told him he was good-looking and offered to give K.P. money if he would allow Petitioner to perform oral sex on him. *Id.*, pp. 94-95. K.P. further testified that Petitioner "clicked a button on his computer" and showed him an image of a female performing oral sex on a male. *Id.*, pp. 95-

3

96. K.P. testified that he then asked to be taken home, and at approximately 2:00 a.m. Petitioner drove the boys to K.P.'s home. *Id.*, pp. 96, 104. K.P. told his mother and grandmother about the incident. *Id.*, p. 97.

On September 22, 2003, Lawton police officers executed a search warrant on Petitioner's home. Tr. Vol.1, pp. 109, 115 116-117. During the search of Petitioner's home, officers found a .45 caliber pistol, a baggie of green leafy substance later determined to be marijuana and other drug paraphernalia. *Id.*, p. 166. Officers seized Petitioner's computer, a compact disk, six 3½ inch floppy disks, two photographs of juveniles engaged in sexual acts and a photograph of a juvenile male in a diaper. Tr. Vol. 1, pp. 121-22; 123; 124-25; 125-26; 167; 128 ;156; 157; 158, 159-60.

**Standard Governing Habeas Corpus Review**

Where a petitioner's claims have been adjudicated on the merits in state court, this Court may grant habeas corpus relief only if that adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of evidence presented in the State court proceeding. 28 U.S.C. § 2254(d)(1) and (2). Under this standard, judicial review is directed to the result of the state appellate court's decision, not its reasoning. *Saiz v. Ortiz*, 392 F.3d 116, 1176 (10th Cir. 2004).

A state court decision is "contrary to" clearly established federal law if "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or if "the

4

state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from" the result reached by the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000). A state court decision is an "unreasonable application" of federal law if the state court identifies the correct governing legal principle from Supreme Court decisions but unreasonably applies that principle to the facts of the prisoner's case. *Id.* at 413. "AEDPA's conception of objective unreasonableness lies 'somewhere between clearly erroneous and unreasonable to all reasonable jurists.'" *House v. Hatch*, 527 F.3d 1010, 1019 (10th Cir. 2008) (quoting *Maynard v. Boone*, 468 F.3d 665, 670 (10th Cir. 2006)), *cert. denied*, 129 S.Ct. 1345 (2009). "Thus, 'only the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254.'" *Id.* (quoting *Maynard*, 468 F.3d at 671)). In conducting this deferential inquiry, the Court presumes that the state court factual findings are correct, and the burden of rebutting this presumption by clear and convincing evidence is placed on the petitioner. *See* 28 U.S.C. § 2254(e)(1); *Smith v. Mullin*, 379 F.3d 919, 924-25 (10th Cir. 2004).

## DISCUSSION

I. <u>**Government-Imposed Ineffective Assistance of Counsel - Ground One**</u>

Petitioner alleges, as he did on direct appeal, that "[t]he trial court denied adequate time to prepare a defense by denying [Petitioner's] motion for continuance, resulting in state-induced ineffective assistance of counsel at trial . . . ." Petition, p. 7. For supporting facts of his grounds for relief, Petitioner merely refers the Court to his direct appeal brief. *Id.* The undersigned has liberally construed this claim to allege that the trial court's refusal to grant

5

a continuance prevented counsel from "possibly" discovering exculpatory evidence and thus prejudice should be presumed. *See* Petition, Ex. 2 (Petitioner's Brief on direct appeal), pp. 10-12. Petitioner also contends that he has demonstrated actual prejudice under the standards set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Id.*

The record, as relevant to this claim, establishes the following. After the trial court declared a mistrial in November 2003, Petitioner's case was set for a new trial on January 26, 2004. *See* Transcript of Proceedings held January 30, 2004, p. 12. On January 12, 2004, Petitioner's newly retained attorney, Kathleen Flanagan, made her first appearance and the judge continued the trial for two weeks, until February 9, 2004. *Id.*, pp. 11-12. At a subsequent motion hearing held January 30, 2004, Ms. Flanagan acknowledged the work done on the case by Petitioner's two previous attorneys but requested additional time to the next docket or a special setting to allow her to conduct independent preparation for jury trial. *Id.*, p. 9. The trial court denied any further continuance, and denied Ms. Flanagan's oral motion to withdraw from the case. *Id.*, pp. 12, 18. At a subsequent hearing held Friday February 6, 2004, Ms. Flanagan requested production of Petitioner's computer hard drive, to which the State agreed, and she again requested a continuance which was denied. Transcript of Proceedings, held February 6, 2004, pp. 4-5. On February 9, 2004, the day of trial, defense counsel filed a motion to suppress the photographs that were found in Petitioner's home, arguing that the Lawton Police Department ("LPD") had reformatted the hard drive of Petitioner's computer on May 6, 2003, thus preventing Petitioner from showing that he did not print, download or otherwise create the child pornography at issue. O.R., pp.

274-75. The trial court denied this motion. Tr. Vol. 1, p. 4.

On direct appeal, Petitioner argued that the trial court had abused its discretion by failing to grant defense counsel's request for a continuance because the ruling prevented counsel from obtaining another computer expert to search for "possibly exculpatory evidence" on the reformatted hard drive of Petitioner's computer, such as "a record of when the computer was used and which Internet sites were visited." Petition, Ex. 2, pp. 9-10. Petitioner argued that the trial court's denial of adequate time to prepare a defense resulted in ineffective assistance of counsel that was "government imposed," and thus, prejudice should be presumed under the standard announced in *United States v. Cronic*, 466 U.S. 648 (1984). *Id.*, p. 12.

The OCCA determined that Petitioner failed to show that the trial court had abused its discretion in failing to grant a continuance. Response, Ex. 3, p. 2. The OCCA further found that Petitioner failed to show that the trial court's ruling deprived him of effective assistance of counsel, and specifically, that Petitioner "ha[d] not shown that he was prejudiced by the trial court's actions." *Id.* (citing *Ochoa v. State*, 963 P.2d 583, 595 (Okla. Crim. App. 1998)). For the reasons discussed below, the undersigned finds that the OCCA's decision was neither contrary to nor an unreasonable application of relevant Supreme Court precedent.[4]

---

[4]The fact that no Supreme Court opinions were cited does not mean that the state court decision is contrary to clearly established Federal law. *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003) (*per curiam*). "[A] state court need not even be aware of [Supreme Court] precedents, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'"

To succeed on a claim of ineffective assistance of trial counsel, a petitioner must ordinarily establish that counsel performed deficiently and that this deficient performance "prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687(1984). In *Cronic*, the Supreme Court identified a narrow exception to the application of *Strickland*'s prejudice requirement when defense counsel completely fails to engage in the adversarial process. *Cronic*, 466 U.S. at 659; *see also Bell v. Cone*, 535 U.S. 685, 697 (2002). *Cronic*, not *Strickland*, applies "when . . . the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial." *Cronic*, 535 U.S. at 659-60.

**A. *Cronic* Analysis**

In *Cronic*, the Supreme Court held that the petitioner need not prove actual prejudice in the following three categories of circumstances: (1) when the petitioner was denied counsel at a critical stage of the proceedings; (2) when the petitioner's counsel "failed to subject the prosecution's case to meaningful adversarial testing"; and (3) when the surrounding circumstances of the trial prevent counsel from affording effective representation. *Id.* at 656. However, to be entitled to relief under *Cronic*, "the attorney's

---

*Id.* (quoting *Early v. Packer*, 537 U.S. 3, 8 (2002) (*per curiam*)). Here, the OCCA disposed of Petitioner's claim of state-induced ineffective assistance of counsel on the merits, rather than on some procedural ground. Thus, the AEDPA's deferential standard is applied to Petitioner's claim of ineffective assistance of counsel even though the OCCA cited no federal precedent. *See Harris v. Poppell*, 411 F.3d 1189, 1196 (10th Cir. 2005)(citing *Early*, *supra*); *Cook v. McKune*, 323 F.3d 825, 831 (10th Cir. 2003) (same).

failure must be complete." *Bell v. Cone*, 535 U.S. 685, 697 (2002).

Petitioner contends that because the trial court refused to grant another continuance, defense counsel was unable to subject the State's case to meaningful adversarial testing, and thus, prejudice is presumed. Petition, Ex. 2, pp. 11-12. However, the undersigned finds that the *Cronic* presumption of prejudice does not apply in this case. First, although defense counsel's time to prepare for trial was limited to four weeks, this relatively short time frame does not in and of itself justify a presumption of ineffective assistance. *See Cronic*, 466 U.S. at 648. "Not every restriction on counsel's time or opportunity to investigate or to consult with his client or otherwise to prepare for trial violates a defendant's Sixth Amendment right to counsel." *Morris v. Slappy*, 461 U.S. 1, 11-12 (1983) (citation omitted).[5] In *Cronic*, having examined the trial as a whole to determine whether there was "an actual breakdown in the adversary process" that would justify a presumption that the result was unreliable, the Supreme Court held that defense counsel's performance was adequate under the Sixth Amendment even though the government had taken four and one-half years to prepare the case and appointed counsel was a young lawyer with a real estate practice who was allowed only 25 days of pretrial preparation. *Cronic*, 466 U.S. at 657. *See also Chambers v.*

---

[5]In *Slappy*, the Supreme Court rejected an ineffective assistance claim based on a public defender who became ill and was replaced prior to trial. The Court in *Slappy* pointed out that the replacement counsel had read all of the relevant transcripts, obtained and reviewed all of the relevant materials, and had met with the defendant several times for extended interviews. *See Slappy*, 461 U.S. at 5-7. Counsel in *Slappy* also assured the trial court that he was prepared to try the case based on his conferences with the defendant and the study he had made of the investigation. *Id.* at 6-7.

*Mahoney*, 399 U.S. 42, 54 (1970) (refusing "to fashion a per se rule requiring reversal of every conviction following tardy appointment of counsel"); *Avery v. Alabama*, 308 U.S. 444, 450-53 (1940) (holding that the denial of a continuance after counsel was appointed in capital case three days before trial did not make it unreasonable to expect that counsel could adequately prepare for trial since evidence and witnesses were easily accessible to defense counsel); *Curliss v. Maynard*, No. 90-6317, 1991 WL 73684, *2 (10th Cir. May 6, 1991)[6] (rejecting per se assumption of incompetence where trial counsel appointed on the first day of trial and instead, evaluating trial counsel's actual performance). No such "actual breakdown in the adversarial process" occurred in the instant case so as to raise a presumption of ineffective counsel.

An examination of the record demonstrates that the adversarial testing envisioned by the Sixth Amendment occurred in Petitioner's case. Petitioner's *Cronic* claim is based on the denial of defense counsel's request for a second continuance in order to arrange for a computer expert to further examine Petitioner's reformatted hard drive.[7] Respondent correctly points out that the State's case was based on the content of the floppy disks and printed photographs that were in Petitioner's home, not on the content of the hard drive of

---

[6]This unpublished decision and any others cited herein are cited as persuasive authority pursuant to Tenth Circuit Rule 32.1.

[7]Apparently LPD officials had authorized the reformatting of the hard drive on Petitioner's computer, based on a mistaken belief that the case had been concluded. O.R. pp. 274-75; Tr. Vol. 3, pp. 463, 467, 470-72.

Petitioner's computer.[8] Response, pp. 9-10 (citing Ex. 6 (trial transcript) pp. 462 and 464). Ms. Flanagan had a month to prepare for trial and had the benefit of the investigative work and trial court records developed by Petitioner's previous attorney. Transcripts of Petitioner's preliminary hearing, a previous hearing on a motion to suppress and the partial trial transcript – all available to Ms. Flanagan – make it clear that as to the charge of possession of child pornography, Petitioner had to mount a defense against the images obtained from several floppy disks and photographs found in his bedroom, as did trial counsel in the first trial. *See e.g.,* Transcript of Preliminary Hearing held December 11, 2002; Transcript of Testimony on motion hearing held October 29, 2003; Transcript of Jury Trial (partial) held November 19 and 20, 2003, pp. 22-38; pp. 39-49; pp. 64-68, 71; pp. 101-04; pp. 118-22. And, indeed, despite the plentiful evidence against Petitioner, defense counsel mounted an aggressive defense on behalf of her client. Defense counsel vigorously cross-examined the State's witnesses regarding the authenticity of the images obtained from the various floppy disks and called an expert witness who testified regarding the recovery of data on floppy disks and reformatted hard drives. Counsel called nineteen witnesses to testify in Petitioner's defense, including two new witnesses not called at Petitioner's first trial (Bobbi Crow and Joshua Darling), and many of these witnesses testified as to Petitioner's

---

[8]With respect to Count Two, Petitioner was charged in an amended information with having possession of child pornography on the hard drive of his personal computer. O.R., pp. 28-29. The prosecutor amended the charge in Count Two to omit the reference to Petitioner's hard drive, simply alleging possession of child pornography. Tr. Vol.1, pp. 74-75.

good character in interacting with children. *Compare* Response, Ex. 6 (portions of Original Record), pp. 186-88 (Second Amended Pretrial Discovery Compliance, filed November 10, 2003) *with* pp. 238-42 (Defendant's Amended Discovery Statement, filed February 6, 2004). Petitioner testified in his own defense, and Ms. Flanagan was able to develop a defense theory that Petitioner had not purchased the computer until August 2002 and that because the images on the floppy disks were created at an earlier date, between February and June 2002, Petitioner could not have downloaded the pornographic images. Ms. Flanagan also presented the testimony of a computer expert who testified regarding the recovery of data from computer hard drives and floppy disks. Finally, Ms. Flanagan gave a closing argument that pointed out weaknesses in the prosecution's case and that emphasized the prosecution's burden of proof. Counsel's representation was diligent and effective as reflected by the jury's acquittal of Petitioner on two counts. Thus, even without the requested continuance to further explore the status of Petitioner's computer hard drive, defense counsel subjected the prosecution's case to meaningful adversarial testing and was an active legal advocate for Petitioner.

Upon examination of the entire record in light of the standard announced in *Cronic*, the undersigned finds that Petitioner has failed to demonstrate circumstances that justify a presumption of prejudice with respect to his claim of ineffective assistance of counsel. *See Cooks v. Ward*, 165 F.3d 1283, 1296 (10th Cir.1998) (holding counsel's performance did not so deny defendant representation that prejudice should be presumed where defense counsel did conduct limited cross-examination, made evidentiary objections and gave closing

argument); *Houchin v. Zavaras*, 107 F.3d 1465, 1471 (10th Cir. 1997) (examining entire trial record and finding no *Cronic* presumption of prejudice where despite certain errors, defense counsel conducted meaningful adversarial testing).

### B. *Strickland* Analysis

Petitioner argued on direct appeal that even if the *Cronic* presumption of prejudice did not apply, he showed actual prejudice under the standards in *Strickland*. Petition, Ex. 2, p. 12. The *Cronic* Court noted that aside from the extreme circumstances in which counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, "there is generally no basis for finding a Sixth Amendment violation unless the accused can show how specific errors of counsel undermined the reliability of the finding of guilt." *Cronic*, 466 U.S. at 659 n.25 (citing *Strickland v. Washington*, 466 U.S. 668, 693-96 (1984)). Thus, to establish a claim of ineffective assistance of counsel under *Strickland*, Petitioner must show that (1) his trial counsel's performance was deficient, *i.e.*, it fell below an objective standard of reasonableness; and (2) Petitioner was prejudiced by counsel's deficient performance, *i.e.*, it is reasonably probable that the result of the proceeding would have been different but for counsel's errors. *Strickland*, 466. U.S. at 687-88. Petitioner bears the burden of establishing both components. *Smith v. Robbins*, 528 U.S. 259, 285-86 (2000).

Even under a liberal reading, Petitioner has failed to articulate what missteps defense counsel made, nor has he shown "that counsel's errors were so serious so as to deprive the defendant of a fair trial." *Strickland*, 466 U.S. at 687. Petitioner's conclusory and factually unsupported allegations are simply insufficient to support a claim that trial counsel was

constitutionally ineffective. *See Cannon v. Gibson*, 259 F.3d 1253, 1262 n. 8 (10th Cir. 2001) ("[C]onclusory assertion that counsel was ineffective, along with a bald reference to *Strickland* . . . is simply not sufficient to preserve this claim."); *United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994) (rejecting pro se conclusory allegations of ineffective assistance of counsel); *James v. Cody*, No. 96-6170, 1996 WL 536522, *1 (10th Cir. Sept. 23, 1996) (conclusory allegations without articulated facts failed to support claim that trial or appellate counsel's performance fell below an objective standard of reasonableness or that their representation prejudiced him in any way). In any event, for the reasons discussed *supra* in examining defense counsel's representation in this case, it is clear there was no breakdown in the adversary system which rendered the result of Petitioner's trial unreliable. Therefore, the undersigned finds that under the more deferential *Strickland* standard, Petitioner has failed to show how specific errors of counsel undermined the reliability of the finding of guilt. *Strickland*, 466 U.S. at 693-96.

In sum, Petitioner has failed to show that the *Cronic* presumption of prejudice is applicable in his case, and further, he has failed to establish that he is entitled to relief under *Strickland*. Therefore, the OCCA's rejection of his claim of state-induced ineffective assistance of counsel is neither contrary to nor an unreasonable applicable of relevant Supreme Court precedent. Petitioner is not entitled to habeas relief on Ground One.

## II. <u>Excessive Sentence - Ground Two</u>

In Ground Two Petitioner alleges that his sentences are excessive, in violation of his rights under the Sixth, Eighth, and Fourteenth Amendments, and should be modified.

14

Petition, p. 9 (citing Ex. 2, pp. 1-6 and pp. 15-17). On direct appeal, Petitioner acknowledged that his sentences were within the range provided by Oklahoma law but argued that under the facts of the case, sentencing Petitioner to consecutive sentences totaling 100 years rather than ordering concurrent sentences was excessive and violated his constitutional rights. Petition, Ex. 2, pp. 15-16. The OCCA agreed that Petitioner's consecutive sentences were excessive and modified his sentences to run concurrently. Response, Ex. 3. Petitioner merely asserts the same claim of excessive sentences urged in his direct appeal. Petition, p. 9. Because the OCCA has already granted Petitioner the relief he requested by ordering his sentences to run concurrently, his claim for habeas relief based on the consecutive sentences is moot.[9]

To the extent Petitioner contends that his sentences, as modified by the OCCA, are excessive, such claim fails to state a claim for federal habeas relief. Sentencing involves the application of state law which is not cognizable on federal habeas review unless Petitioner shows that the challenged sentence is outside the statutory limits or otherwise unauthorized by law. *See Dennis v. Poppel*, 222 F.3d 1245, 1258 (10th Cir. 2000). Petitioner does not and cannot claim that his sentences, as modified by the OCCA, exceed the maximum allowed by

---

[9]The corrective action taken by the OCCA is both authorized by Oklahoma law and constitutional. Okla. Stat. tit. 22, § 1066 confers upon the OCCA the power to review the entire record to determine the appropriateness of the judgment and the sentence, and to exercise its authority to modify a sentence. *See Livingston v. State*, 795 P.2d 1055, 1058 (Okla. Crim App. 1990). Furthermore, if a state appellate court has authority to exercise its own discretion and modify a jury sentence on appeal as a matter of state law, no due process violation occurs when it does so. *Carbray v. Champion*, 905 F.2d 314, 317-318 (10th Cir. 1990) (citing *Clemons v. Mississippi*, 494 U.S. 738, 746 (1990)).

law. Petitioner admitted that he had previously been convicted of two or more felonies, and he was therefore subject to a maximum sentence of life imprisonment on each count. *See* Okla. Stat. 21, § 51(C) (2002); *see also* O.R., pp. 329, 331, 335 (Jury Instructions - Nos. 37, 38, & 40). Thus, Petitioner's concurrent sentences of forty years, twenty years, and forty years, respectively, are well within the statutory range.

Moreover, Petitioner's sentences, as modified by the OCCA to be served concurrently, do not amount to cruel and unusual punishment. "The Eighth Amendment, which forbids cruel and unusual punishments, contains a narrow proportionality principle that applies to noncapital sentences." *Ewing v. California*, 538 U.S. 11, 20 (2003) (citation and internal quotations omitted). The proportionality principle, however, "reserves a constitutional violation for only the extraordinary case." *Lockyer v. Andrade*, 538 U.S. 63, 77 (2003). *See also United States v. Gillespie*, 452 F.3d 1183, 1190-1191 (10th Cir. 2006) (summarizing Supreme Court precedent on the proportionality principle and noting that "the [Supreme] Court has only twice invalidated a sentence under the Eighth Amendment: once in 1910, when the defendant was sentenced to fifteen years in chains and hard labor for falsifying a public document; and most recently in 1983, when the defendant was sentenced to life without parole after committing six nonviolent felonies including writing a bad $100-dollar check") (citations omitted). In determining whether there is "gross disproportionality," the Tenth Circuit has weighed "a variety of factors, including the seriousness of the crime, the fit between the punishment and the crime, and the existence of legislative determinations of an appropriate sentence range." *Milburn v. Hines*, No. 05-7007, 2005 WL 1972604,* 2 (10th

Cir. Aug. 17, 2005) (citing *Hawkins v. Hargett*, 200 F.3d 1279, 1284-85 (10th Cir. 1999)). Petitioner's sentences are within the statutory range of punishment for each criminal offense and such sentences will be served concurrently. The instant case is not one of the rare "extraordinary" cases where the sentence is grossly disproportionate to the crimes for which they were imposed. Accordingly, Petitioner is not entitled to habeas relief on this claim.

## **RECOMMENDATION**

Based upon the foregoing analysis, it is recommended that the petition for a writ of habeas corpus be denied. Petitioner is advised of his right to file an objection to this Report and Recommendation with the Clerk of this Court by April 6, 2010, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. Petitioner is further advised that failure to make timely objection to this Report and Recommendation waives his right to appellate review of both factual and legal questions contained herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991). This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter.

ENTERED this 17th day of March, 2010.

_____
BANA ROBERTS
UNITED STATES MAGISTRATE JUDGE